

U.S. Department of Justice

United States Attorney
Eastern District of New York

NEM:VC/BB

271 Cadman Plaza East
Brooklyn, New York 11201

June 20, 2024

By ECF and E-mail

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Minsu Fang, also known as Fernando
      No. 24-MJ-430

Dear Judge Scanlon:

  The Government respectfully submits this letter in support of its motion to detain the defendant Minsu Fang also known as Fernando, pending his removal to the U.S. District Court for Southern District of Texas.  The defendant is a Chinese citizen who was arrested yesterday at John F. Kennedy ("JFK") Airport in Queens, New York, pursuant to an arrest warrant from the Southern District of Texas which charges him with a number of serious drug crimes related to the trafficking of fentanyl precursors.

  The defendant will make his first appearance today before Your Honor.  The nature of these charges gives rise to a statutory presumption that no condition or combination of conditions will reasonably assure the defendant's appearance or the safety of the community.  See 18 U.S.C. § 3142(e)(3)(A).  As a foreign national facing grave charges with no known ties to the United States other than his criminal activity, the defendant presents a significant risk of flight.  Further, the enormous quantities of fentanyl that the defendant has trafficked present a significant danger to the community.  For these reasons and those described below, no condition or combination of conditions are sufficient to overcome the statutory presumption and the defendant should remain in custody for his removal to the Southern District of Texas.

  I. Factual Background

    A. Background and Charged Offense Conduct

  As detailed in the attached criminal complaint in this case, in August 2023, the Drug Enforcement Administration ("DEA") in coordination with Homeland Security Investigations ("HSI") began an investigation into the defendant who was identified as a head of a drug trafficking organization (the "Fang DTO").

During the ongoing investigation, the government has determined that the Fang DTO is responsible for coordinating and distributing multi-ton quantities of fentanyl precursors, specifically 1-Boc-4-piperidone (List 1 Chemical) and 2-Bromoethyl benzene (DEA Special Surveillance List Chemical), throughout the United States with a final destination to Mexico.

As a result of the investigation, the government has determined that the Fang DTO packages and ships bulk chemicals, used in the manufacturing of fentanyl to the United States, specifically the Southern District of Texas. (Fentanyl is a Schedule I controlled substance.) Once the chemical packages are received by co-conspirators in the Southern District of Texas, the packages are transferred or shipped across the U.S.-Mexico Border to other co-conspirators.

From August 23, 2023 to October 2, 2023, the government seized a total weight of approximately 2,500 kilograms of 1-boc-4-piperidone and 2-Bromethyl benzene. The investigation has determined that the contents of the packages were incorrectly labeled and mis-manifested to conceal the actual contents. In addition, agents have determined that neither the defendant nor any of the recipients of the packages are authorized to import or export 1-boc-4-piperidone, a List I Chemical into the United States. Based on source information, agents have reviewed and determined that the seizures of the specific fentanyl precursors were shipped from the People's Republic of China ("China") at the defendant's direction and destined for Mexico by transiting through the United States (specifically, the Southern District of Texas). Source information also indicates that the defendant instructed where in Mexico the packages should be sent.

From September 9, 2023, to September 21, 2023, the defendant and a confidential source also engaged in negotiations in which the confidential source discussed his/her interest in the purchase of fentanyl precursors from the defendant. The defendant agreed to sell fentanyl precursors to the confidential source and to ship them to the confidential source by air and sea from China to the United States with a final destination to Mexico. The defendant agreed to start off by sending 100 kilograms to establish a fentanyl precursor smuggling route. The defendant sent the confidential source his banking information to commence his sale and exportation of the fentanyl precursors to Mexico through the United States.

On June 18, 2024, United States Magistrate Judge Diana Song Quiroga sitting in the Southern District of Texas found probable cause and signed a criminal complaint in cause number 5:24-MJ-773, charging the defendant with: (1) Conspiracy to Import a Listed 1 Chemical pursuant to Title 21 of the United States Code, Sections 952 and 963, (2) Conspiracy to Export a Listed 1 Chemical pursuant to 952 and 963, (3) Conspiracy to Import a Listed 1 Chemical for manufacture of fentanyl pursuant to 959(b), 960 and 963, and (4) Conspiracy to manufacture fentanyl pursuant to 841 and 846.[1] On June 19, 2024, the defendant was arrested at JFK Airport before he boarded a flight to Mexico City, Mexico.

---

[1] Based on the total amount of fentanyl that could be manufactured in this case Defendant would be subject at minimum to penalties under 21 USC § 841(c) and 960(d)—each of which carries a maximum sentence of 20 years' imprisonment.

      B.      Lack of Any Financial Assets in or Ties to the United States

The defendant is a citizen and resident of the China with no residency status in the United States. Defendant was arrested on the criminal complaint in transit through the United States from the China to Mexico. The defendant lacks any known, non-criminal ties to the Eastern District of New York, the Southern District of Texas and indeed the United States as a whole. During the government's investigation, the government has not located any financial assets in the United States, no family or personal relations in the United States, or any other connection to the United States beyond shipping and the criminal activity outlined in the attached criminal complaint.

Further, the defendant made false statements to U.S. Customs and Border Protection during his multiple day layover in the United States while in transit to Mexico. The defendant provided a false address to Customs and Border Protection as to the hotel he was staying at based on law enforcement surveillance and Customs and Border Protection records.

    II.    Legal Standard

Under the Bail Reform Act, federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight need only be based on a preponderance of the evidence. See United States v. Boustani, 932 F.3d 79, 81 (2d Cir. 2019) (citing United States v. Sabhani, 493 F.3d 63, 75 (2d Cir. 2007)).

In deciding whether to release or detain a defendant, a court "must undertake a two-step inquiry." United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988). "It must first determine by a preponderance of the evidence that the defendant either has been charged with one of the crimes enumerated in Section 3142(f)(1) or that the defendant presents a risk of flight or obstruction of justice." Id. "Once this determination has been made, the court turns to whether any condition or combinations of conditions of release will protect the safety of the community and reasonably assure the defendant's appearance at trial." Id.

If the court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order" a defendant detained. 18 U.S.C. § 3142(e)(1). The government may proceed by proffer to establish facts relevant to a detention determination. United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995). Furthermore, "[t]he rules of evidence do not apply in a detention hearing." Id. at 542. As the Second Circuit has explained:

> [I]n the pre-trial context, few detention hearings involve live testimony or cross examination. Most proceed on proffers. See United States v. LaFontaine, 210 F.3d 125, 131 (2d Cir. 2000). This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery." United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 1985) (Breyer, J.) (quoted approvingly

in LaFontaine, 210 F.3d at 131). Indeed, § 3142(f)(2)(B) expressly states that the Federal Rules of Evidence do not apply at bail hearings; thus, courts often base detention decisions on hearsay evidence. Id.

United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The Bail Reform Act also "provides that there is a rebuttable presumption that 'no condition or combination of conditions will reasonably assure'" against flight or danger where probable cause supports a finding that the person seeking bail committed certain types of offenses, including—as applicable here—"an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.)." See United States v. English, 629 F.3d 311, 319 (2d Cir. 2011) (quoting 18 U.S.C. § 3142(e)(3)(A)). The application of the presumption means that the Court must initially assume that there is "no condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of any other person and the community." Id. A defendant must then come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001). Even if a defendant were to meet that burden, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." Id.

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history). In other words, defendants "pose a danger to the community not only when they commit acts of violence, but also when it is likely they will commit non-violent acts that are detrimental to the community." United States v. Maratea, No. 18-CR-337-5 (WFK), 2018 WL 11191537, at *3 (E.D.N.Y. Nov. 20, 2018). The likelihood of a lengthy term of imprisonment gives the defendant a strong incentive to flee and greatly minimizes any risk that pre-trial detention would result in an over-served sentence. See United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022)

Because courts define "dangerousness" to encompass "the danger that the defendant might engage in criminal activity to the detriment of the community," it is clear that the defendants here have endangered the community through their criminal conduct. Millan, 4 F.3d at 1048 (quoting legislative history). "[T]he harm to society caused by narcotics trafficking," United States v. Leon, 766 F.2d 77, 81 (2d Cir. 1985), unquestionably poses a danger to the community, and thus warrants the detention of the defendant here.

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists the following four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt. See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012). Where the evidence of guilt is strong, there is "a considerable additional incentive to flee." Millan, 4 F.3d at 1046; see also United States v.

Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").

Where a judicial officer concludes after a hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1).

### III. The Defendant Should Be Detained Pending Removal

The defendant can present no evidence to rebut the presumption of detention in this case. As explained further below, he is a danger to the community, having trafficked more than a ton of chemicals used to make one of the deadliest drugs. Further, he poses a serve risk of nonappearance and flight as a Chinese citizen with no ties to the United States who was arrested on serious charges providing significant incentive to flee.

#### A. The Dangerous Nature and Circumstances of the Defendant's Criminal Conduct Support Detention

The defendant's conduct poses an enormous risk and danger to the entirety of the United States and international community. Fentanyl, as the Court is aware, is a deadly drug. The DEA estimates that two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage.[2] The image below includes approximately two milligrams of fentanyl and demonstrates just how lethal fentanyl actually is.



---

[2] See DEA, Facts about Fentanyl, (Mar. 25, 2024 at 5:50 p.m.), https://www.dea.gov/resources/facts-about-fentanyl.

The DEA Laboratory in this case has estimated that the fentanyl precursors seized in relation to this complaint could produce approximately 2,500 kilograms of fentanyl resulting in approximately two billion, two hundred and eighty-four million fatal doses of fentanyl.

B. <u>Substantial Risk of Flight and Lack of Any Ties in the United States</u>

As discussed above, the defendant has no known ties to the United States beyond his criminal activity. The defendant has no known family, assets, residence, or other ties to the United States as a whole and was arrested transiting through the United States to Mexico from his county of residence. Based on the quantities of drugs seized, the defendant would be subject at minimum to penalties under 21 U.S.C. §§ 841(c) and 960(d) and would face a maximum sentence of twenty years in prison under either charge. A preliminary estimate of the defendant's Guidelines ranger under the U.S. Sentencing Guidelines is 324 to 405 months. Facing a significant sentence upon conviction and with no ties to the United States, the defendant has enormous incentive to flee the jurisdiction if released from custody.

Indeed, the defendant is a citizen of China – a country that does not have an extradition treaty with the United States. Given the penalties he faces and his ties to China, he has every incentive to flee  See <u>Liebowitz</u>, 669 F. App'x at 605 ("the lengthy jail sentence that could be imposed for the charged crimes provides an incentive to flee [and] the likelihood of flight is reinforced in this case by that fact that Liebowitz holds Australian as well as United States citizenship and has family members in Australia"); <u>United States v. Baig</u>, 536 F. App'x 91, 93 (2d Cir. 2013) (affirming detention order in part because the defendant "though a permanent resident of the United States, is a citizen of Pakistan and maintains ties there"); <u>United States v. Mercedes</u>, 254 F.3d 433, 438 (2d Cir. 2001) (ordering pretrial detention and reversing the district court's grant of release where the defendant was a legal permanent resident of the United States (not a citizen), faced a substantial sentence, and evidence linked him to a violent robbery); <u>United States v. El-Hage</u>, 213 F.3d 74, 80 (2d Cir. 2000) (noting that a defendant's "history of travel and residence in other countries" is a factor that has been long-approved by the Second Circuit in determining whether a defendant should be detained).

IV. <u>Conclusion</u>

For the reasons set forth above, the defendant should be detained pending his removal to the Southern District of Texas.

Respectfully submitted,

BREON PEACE
United States Attorney

By: <u>/s/ Vincent Chiappini</u>
Vincent Chiappini
Assistant U.S. Attorney
(718) 254-6299

cc: Clerk of the Court (VMS) (by e-mail)
Defense Counsel (by E-mail)